[Crim. No. 14754. Fourth Dist., Div. Three. Mar. 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
TUNG THANH LE, Defendant and Appellant.

[Crim. No. 12674. Fourth Dist., Div. Three. Mar. 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BO QUOC PHAM et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

<hr>

[1]Parts II, III, IV, V, and VI are not published because they do not meet the standards for publication. (Cal. Rules of Court, rule 976.1.)

## COUNSEL

Edward J. Roberts, James P. Persinger, James H. Cesena, Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointments by the Court of Appeal, Carol Matsunaga and Edward H. Schulman, Deputy State Public Defenders, Scott, Persinger & Muehl, Scott, Persinger, Muehl & Kebre, R. E. Scott, Cesena, Lee & Spencer, Cesena & Lee and Ann Shaw for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Defendants appeal their convictions of kidnaping for robbery (Pen. Code, § 207),[2] forcible rape in concert (§ 264.1), forcible oral copulation in concert (§ 288a), attempted oral copulation in concert (§§ 664/

---

[2]All references are to the Penal Code unless otherwise indicated.

288a), attempted sodomy in concert (§§ 664/286), robbery (§ 211) and assault with intent to commit rape (§ 220). Their consolidated appeals challenge several trial court rulings and raise various sentencing issues. Arguments raised by individual defendants are treated separately, while those raised by several defendants are combined and analyzed in a single discussion.

## I.

Defendants were convicted of the following crimes committed against six victims:

### 1. *Tamara*

Tamara (age 20) was walking near Disneyland at 10:30 p.m. on July 7, 1980, when four oriental men in a car asked her for directions. When she approached the car, the men asked her for a date. Tamara said she would think about it and asked for a ride to her hotel. She identified Nguyen, Bo Pham and Dung Pham as passengers of the car.

Once inside the car, Nguyen pointed a large barrelled pistol at Tamara, threatened to kill her if she wouldn't be quiet and told her they were going to Mexico. Almost an hour later, the driver (Bo Pham) stopped the car at a construction site. The men folded the backseats of the car down to form a flat area. Tamara was ordered to take off her clothes and when she refused, Nguyen touched her leg with a knife then pointed the pistol between her legs and told her he would blow her vagina away if she continued to refuse to undress. The men pulled her clothes off and forced her to have intercourse with them 10 times, attempted to sodomize her once, and attempted to have her orally copulate them twice. When Tamara told Nguyen she was going to get sick on him, he threw her clothes and her purse at her and offered to drive her home. Tamara declined the offer and was pushed out of the car as it started to move. As the car drove away, Tamara noticed the rear license plate was covered with paper. She also noticed her purse had been opened and the $160 to $180 she previously had in her purse was gone.

### 2. *Lisa*

At approximately 10 p.m. on July 11, 1980, two oriental men asked Lisa (age 19) for directions to Harbor Boulevard. As she reached for pen and paper to draw a map, the men picked her up and forced her into a car occupied by two other oriental men. Lisa identified the men as the four defendants. As they drove away, the man in the front seat pointed a large

barrelled pistol at Lisa and told her he would kill her if she did not stop screaming.

The car was parked in an orange grove approximately 25 minutes later. The men folded the back seats down to make a flat area and pulled Lisa's clothes off her. She was forced to have intercourse five times and orally copulate one of them. In addition, she was subjected to three attempts of oral copulation and one attempt of sodomy. The men pushed Lisa out of the car in Huntington Beach close to where she was abducted. She refused to accept money they offered her.

### 3. *Linda*

Linda (age 15) was in a phone booth at 12:30 a.m. on July 19, 1980, when two oriental men approached her and asked directions. As she asked to see their map, the men grabbed her and threw her into the backseat of a car occupied by two other oriental men. Linda identified the defendants as the four men in the car. She testified the driver twirled a pistol as he drove. The car was driven into an orange grove, the backseats were folded down, and Linda was forced to undress. She was forced to have intercourse five times and forced to orally copulate two men while two others had intercourse with her. She was then driven back into town and released.

### 4. *Lydia*

At 1 a.m. on August 2, 1980, Lydia (age 21) was standing in front of the Anaheim Convention Center when an oriental man grabbed her and put her into the backseat of a car occupied by three other oriental men. Lydia identified Le, Bo Pham and Dung Pham as three of the men inside the car. She testified a large barrelled pistol was pointed at her as the car was driven to a secluded area. The back seats of the car were folded down, and Lydia was told to undress. She was forced to have intercourse three times before she was driven back to Anaheim. At trial, she identified a bracelet that was found in Bo's car.

### 5. *Cori*

On August 8, 1980, Cori (age 18) walked to the restaurant where she worked to pick up her uniform. A car pulled up beside her and an oriental man asked her for directions. A second man got out of the car and the two men grabbed Cori and forced her into the backseat of the car. Two other oriental men were inside the car. Cori identified the defendants as the four men in the car. The man in the front seat pointed a gun at her and said he would hurt her if she would not be quiet. Cori was driven to an orange

grove, the back seats of the car were folded down, and she was forced to undress. Cori was forced to have intercourse five times and to orally copulate the men seven times. The men then drove her back into town and gave her $60.

### 6. *Julie*

Julie (age 17) was forced into a car with four oriental men on the evening of August 11, 1980. She identified Le, Bo Pham and Dung Pham as being inside the car. Julie was driven at gunpoint to a grove of trees where the back seats of the car were folded down, and she was forced to take her clothes off. Because Julie was menstruating, she was wearing a tampon. The men asked her what kind of disease she had and she told them it was venereal disease. She was forced to orally copulate two men before she was driven back to Costa Mesa and dropped off.

Three men were arrested the next day when they appeared at the restaurant where Cori worked and asked for her. Cori identified two of them as the men who raped her. The other two defendants were apprehended from leads given by the first two defendants arrested.

After a jury trial, the defendants were found guilty on most of the 68 counts charged. The jury also found a principal was armed in 38 of the offenses, and the defendants acted in concert during the rapes. The defendants' letters to the trial court, deemed to be motions for a new trial, were denied, and they filed timely notices of appeal.

II.-VI.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### VII.

Defendants raise several issues relating to the application of sections 667.6, 1170.1, subdivision (i), and section 12022.3, subdivision (b).[6] Pur-

---

*Not for publication, see footnote 1, *ante,* page 1.

[6]Section 667.6 provides:

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. If such term is

suant to those statutes, Bo Pham and Dung Pham received a sentence of 9 years for the rape conviction on count 12; full, separate consecutive terms totaling 87.5 years for 7 rape convictions, 5 oral copulation convictions and 1 attempted oral copulation conviction; and 22 years for enhancements to be served consecutively to the 9-year rape conviction sentence. They each received a total term of imprisonment of 118.5 years. Minh Nguyen received a sentence of 9 years for the rape conviction on count 12; full, separate consecutive terms totaling 73.5 years for 7 rape convictions, 2 oral copulation convictions and 1 attempted oral copulation conviction; and 18 years for enhancements to be served consecutively to the 9-year rape conviction sentence. His total prison term amounts to 100.5 years. Tung Le received a sentence of 7 years for his rape conviction on count 28 and full, separate consecutive terms amounting to 63 years for 6 rape convictions and 4 oral copulation convictions. His total prison term equals 70 years. Sentences on all other counts were stayed for all four defendants. The defendants now contend: (1) the trial court committed several sentencing errors; (2) the length of their sentences constitutes cruel and unusual punishment; and (3) section 667.6 violates their rights to equal protection of the law.

A. *Sentencing Errors*

█ The first issue raised is whether the trial court erred in failing to state its reasons for imposing full, separate, and consecutive sentences under

---

imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison.

"(d) A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions.

"Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

Section 1170.1, subdivision (i) provides: "[¶] For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement."

Section 12022.3 provides: "For each violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon."

section 667.6, subdivision (c). Because the trial court has the discretion to sentence a defendant under section 667.6, subdivision (c) rather than under section 1170.1, defendants correctly contend the decision to sentence under 667.6, subdivision (c) is a sentence choice for which the court must state its reasons. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 347 [193 Cal.Rptr. 882, 667 P.2d 686]; *People* v. *Thompson* (1982) 138 Cal.App.3d 123, 126 [187 Cal.Rptr. 612].)

In *Belmontes,* the California Supreme Court held section 667.6, subdivision (c) is a discretionary provision to be imposed in lieu of the term provided in section 1170.1. Therefore, the record must reflect "recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*People* v. *Belmontes, supra,* 34 Cal.3d at p. 348.) The court suggests the following procedure for the trial court in deciding which sentencing scheme to impose: "The ideal method of proceeding would be for the trial court first to decide generally between concurrent and consecutive terms, following the criteria listed in rule 425. Once the court has decided to sentence a defendant to consecutive terms and has stated its reasons therefor, it then must decide whether the consecutive terms should be under the principal/subordinate scheme of section 1170.1 or under the full and separate term scheme of section 667.6, subdivision (c). If the latter is chosen, the reasons therefor should be stated for the record. This decision, of course, should be made very carefully, for the Legislature obviously intended by the alternative language in section 667.6, subdivision (c) that this more punitive provision be reserved for the more serious sex offenders." (*Id.,* at pp. 348-349.)

The record here does not clearly reflect the trial court's understanding of its discretion under section 667.6, subdivision (c). The trial court's reasons for imposing full consecutive sentences were: (1) each offense constituted a separate act of violence; (2) several sentences were stayed for which sentences could have been imposed; and (3) the Legislature intended these crimes to be punished by full consecutive terms. Although these reasons support the trial court's decision to impose consecutive rather than concurrent sentences, they do not justify the imposition of the more punitive provisions of section 667.6, subdivision (c) as opposed to section 1170.1. Therefore, the matter must be remanded for resentencing.[7]

---

[7]Under section 667.6, subdivision (d), the trial court is required to impose a full, separate, and consecutive term for crimes involving separate victims. Therefore, one full consecutive term must be imposed, in addition to the base term, for each separate victim. (See *People* v. *Fleming* (1983) 140 Cal.App.3d 540 [189 Cal.Rptr. 619].) In order to impose additional full consecutive terms, however, the trial court's reasons for invoking section 667.6, subdivision (c) must be separately stated. In *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 352, 4 [185 Cal.Rptr. 498], the court stated: "While the sentencing judge is required to

■ Defendants also contend the lack of sentencing guidelines precludes the trial court from invoking section 667.6, subdivision (c). They rely on section 1170.3, subdivision (a) which provides: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170, by: [¶] (a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to: . . . [¶] (3) Impose concurrent or consecutive sentences." This argument is without merit. In *People* v. *Karsai* (1982) 131 Cal.App.3d 224 [182 Cal.Rptr. 406], the applicability of California Rules of Court, rule 425 to the decision to impose consecutive sentences under section 667.6, subdivision (c) was upheld. The court stated: "It would be contrary to the legislative intent of Penal Code section 667.6, subdivision (c) to hold that a trial court could not exercise the discretion granted until the judicial council provides a specific rule governing that choice when the rule would of necessity be a mere reiteration of existing rule 425." (*Id.,* at p. 238; see also *People* v. *Wilson, supra,* 135 Cal.App.3d 343, 354.) Therefore, the trial court can properly impose sentence under section 667.6, subdivision (c) regardless of the absence of specific guidelines.

■ Nguyen, Bo Pham, and Dung Pham contend their sentence on count 21 was improper because section 667.6, subdivision (c) and section 1170.1, subdivision (i) (formerly subd. (h)) do not apply to attempted crimes. We agree. Full consecutive terms and full consecutive enhancements are only authorized for violations of certain sex crimes enumerated in section 667.6, subdivision (c) and section 1170.1, subdivision (i). Although forcible oral copulation is specifically listed in section 667.6, subdivision (c), *attempted* forced oral copulation (§§ 664/288a) is not. Because attempted crimes are considered to be separate and distinct, they are not automatically included in the list of sexual offenses to which section 667.6, subdivision (c) applies. (See *People* v. *Young* (1981) 120 Cal.App.3d 683, 695 [175 Cal.Rptr. 1]; *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d

---

separately state reasons for utilizing section 667.6, subdivision (c), this does not mean that the reasons must be separate and distinct from those used to justify imposition of consecutive sentences. For example, it is permissible for the sentencing judge to first state his reasons for imposing consecutive sentences using primarily the criteria contained in California Rules of Court, rule 425 (see rules 421, 423). The judge should then state which of these reasons justify imposing full, separate and consecutive terms under section 667.6, subdivision (c). [¶] This suggested sentencing procedure, which is not exclusive, is not subject to the prohibition against dual use of facts. . . . [I]t would be nearly impossible to formulate a set of criteria for the utilization of section 667.6, subdivision (c), that would be separate and distinct from the criteria listed in rule 425. Moreover, any circumstance which justifies imposition of full consecutive terms under section 667.6, subdivision (c), would of necessity justify imposition of consecutive sentences under section 1170.1, subdivision (a). [Citation omitted.]"

396].[8]) Furthermore, if the Legislature had intended to include attempts in the enhancement provisions, it would have specifically stated the enhancement applies to the "commission or attempted commission" of specific crimes as it did in other enhancement provisions. (See §§ 12022, subd. (a), 12022, subd. (b), 12022.2, 12022.5, 12022.6, 12022.7.) Failure to provide this language in section 12022.3, subdivision (b) lends additional support to our holding attempted crimes are not included in the statutory provisions. Therefore, the more lenient provisions of section 1170.1, subdivision (a)[9] should have been followed to impose one-third of the middle base term and exclude enhancements. The trial court is ordered to set aside the sentences on count 21 as to Bo Pham, Dung Pham and Nguyen and resentence them in accordance with this opinion.

Nguyen and Le next argue the enhancements imposed pursuant to section 12022.3, subdivision (b) are improper. They rely on *People* v. *Reed* (1982) 135 Cal.App.3d 149 [185 Cal.Rptr. 169] which held that in the absence of any legislative direction to impose derivative liability, the statute applies only to defendants who are *personally* armed with a firearm or deadly weapon. We disagree with the holding in *Reed*. Extending the *Reed* analysis to its logical conclusion produces an absurd result: If two perpetrators commit a rape—one holding a gun to the victim's head while the other rapes her—only the one holding the gun receives an enhancement.

Section 12022.3, subdivision (b) clearly and unambiguously applies to persons who are "armed with a firearm or any other deadly weapon." If the Legislature had intended to restrict imposition of this enhancement to persons who are personally armed, it would have inserted the word "personally" as it did in other enhancement provisions. (See §§ 12022, subd. (b), 12022.5, 12022.7.) The *Reed* court correctly observes that the Legislature has shown it knows how to limit an enhancement to one who personally commits the proscribed act but incorrectly construes the statute to re-

---

[8]In *Harvey,* the trial court was ordered to set aside the sentence on an enhancement for firearm use because section 1170.1, subdivision (a) allows enhancements of consecutive offenses only for the specific offenses listed in section 667.5, subdivision (c). Because the offense of robbery with firearm use was not specifically listed in section 667.5, subdivision (c), the enhancement imposed was improper.

[9]Section 1170.1, subdivision (a) provides: ". . . The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements." Attempted forcible oral copulation is not listed in section 667.5, subdivision (c).

quire a specific legislative directive in order to impose derivative liability.[10] We hold section 12022.3, subdivision (b) applies to all accomplices and does not require each person to be personally armed.

■ Nguyen alternatively argues the enhancements on counts 12 and 13 are improper because they violate the rule in *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23]. Bo Pham and Dung Pham raise a similar issue regarding counts 13, 28, 42, 48 and 68. *Culbreth* precludes the imposition of multiple enhancements when a defendant is convicted of multiple crimes arising out of a single transaction. Relying on *Culbreth,* defendants argue their sentences could be enhanced only once for each victim. Therefore, they argue the enhancements on counts 13, 21, 28, 42, 48 and 68 were improper.

Section 1170.1, subdivision (i), however, specifically provides for the imposition of multiple enhancements for convictions of certain sex offenses. Because defendants were convicted of the specified sex offenses, their sentences were properly enhanced under section 1170.1, subdivision (i). This result is further supported by *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569] which held the *Culbreth* rule applies to sentences imposed under the determinate sentencing law (DSL) with one possible exception. The court cited *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 448 [172 Cal.Rptr. 652] which stated, in dicta, "[t]he one exception . . . is subdivision (h) [now (i)] of Penal Code section 1170.1 . . . . [¶] By adding subdivision (h) to Penal Code section 1170.1, it is clear that the Legislature intended that in regards to the specific offenses listed in subdivision (h), the number of enhancements which could be imposed could not be limited. ■ ■ ■ ■ This appears to be the only area in the DSL whereby the Legislature expressly determined or by necessary implication abrogated the single-occasion rule set forth in *Culbreth.*" (*Ibid.*)[11]

■ The last sentencing issue is raised by Tung Le who argues the trial court improperly relied upon the same facts to both aggravate his terms of imprisonment and to justify the imposition of consecutive sentences. At first glance, this argument appears to have merit. The contention is flawed, how-

---

[10]The *Reed* court's reliance on the "well-established policy that a penal statute is to be construed 'as favorably to the defendant as its language and the circumstances of its application reasonably permit'" (*People* v. *Reed, supra,* 135 Cal.App.3d at p. 153) is inconsistent with Penal Code section 4 which provides: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

[11]In a related argument, Dung Pham contends section 654 precludes multiple enhancement sentences. His argument is without merit, however, because section 654 does not apply to enhancements. (*People* v. *Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629].)

ever, because the trial court did not aggravate the terms and was not required to state reasons for imposing middle base terms. (*People* v. *Arceo* (1979) 95 Cal.App.3d 117, 121 [157 Cal.Rptr. 10].) In any event, the trial court correctly weighed both the mitigating and aggravating circumstances and concluded the middle base term was the appropriate term.

### B. *Cruel and Unusual Punishment*

Relying on *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], defendants argue their sentences constitute cruel and unusual punishment. Because the matter is being remanded to the trial court for resentencing in accordance with this opinion, it would be futile to address the cruel and unusual punishment issue at this time. Until the defendants are properly sentenced, we are unable to evaluate the constitutionality of their sentences.

### C. *Equal Protection*

■ Nguyen, Bo Pham, and Dung Pham also contend the application of section 667.6 violated their constitutional right to equal protection by discriminating against them as sex offenders. We disagree. Defendants have failed to show that violent sex offenders are similarly situated with offenders of other crimes. (*People* v. *Wilson, supra,* 135 Cal.App.3d at p. 356; *People* v. *Karsai, supra,* 131 Cal.App.3d at p. 244.) Because the Legislature has the right to treat persons differently who are not similarly situated, the unique sentencing procedure outlined in section 667.6 does not violate the defendants' right to equal protection. (*People* v. *Wilson, supra,* 135 Cal.App.3d at p. 356.) Furthermore, "[b]y requiring the court to separately state its reasons for sentencing under section 667.6, subdivision (c), we have reasonably construed the statute to avoid constitutional infirmity." (*Ibid.*)

All remaining issues have been carefully considered and determined to be without merit. The judgment is affirmed and the matter is remanded for resentencing as expressed in this opinion.

Trotter, P. J., and Crosby, J., concurred.

The petitions of appellants Bo Pham and Nguyen for a hearing by the Supreme Court were denied May 23, 1984.