Filed 10/18/19 (unmodified opn. attached)
**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B288533 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA067997) |
| v. | ORDER MODIFYING OPINION |
| ALONZO LEE VITAL, | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on October 3, 2019, be modified as follows:

1.  On page 4, second sentence of the second full paragraph, the number "3" is deleted so the sentence reads:

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 3 of the Discussion.

The trial court imposed six years on count 3, and an additional two years consecutive, for each violation of section 288, subdivision (a), in counts 9 through 12.

2. On page 4, the last sentence of the second full paragraph, the number "16" is changed to "14" so that is reads:

The total aggregate term for the determinate portion of the sentence was 14 years in state prison.

This modification does not change the judgment.

CERTIFIED FOR PARTIAL PUBLICATION.

_____

    HANASONO, J.*             LAVIN, Acting P. J.

---

    * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/3/19 (unmodifed version)

**CERTIFIED FOR PARTIAL PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B288533 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA067997) |
| v. | |
| ALONZO LEE VITAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge. Affirmed in part and reversed in part with directions.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 3 of the Discussion.

Attorney General, Margaret E. Maxwell and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

Alonzo Lee Vital instructed a mother to engage in acts of a sexual nature with her three-year-old son. A jury found him guilty of oral copulation with a child 10 years old or younger and other related charges. However, the trial court incorrectly instructed the jury that Vital, instead of the mother who directly perpetrated the acts, had to be 18 years old or older. In the published portion of this opinion, we discuss why this was prejudicial error. In the unpublished portion, we conclude that we must reverse the convictions on counts 2, 5, 6, 7, and 8, and remand for resentencing because there was insufficient evidence the direct perpetrator, mother, was 18 years old or older.

## FACTUAL AND PROCEDURAL HISTORY

1. Facts

   a. *Prosecution Evidence*

On December 16, 2015, Vital exchanged text messages with Zaria Vaughan, whom he had met on social media three or four years earlier. Vital reminded Vaughan of an earlier promise to perform oral sex on his "lil lil homie." Vaughan initially replied, "That was years ago." When Vital told her that the "lil homie" was 11 years old, Vaughan expressed unwillingness. She said she was too old and had kids. When she complained that the "lil lil homie" was not even 15 years old, Vital asked if 15 was the youngest age she would consider. Vaughan replied, "No the youngest I will go is 18."

On December 17, 2015, Vaughan sent 11 video clips to Vital. Six of the video clips depicted Vaughan performing oral sex on her three-year-old son. Four of the videos depicted

2

Vaughan simulating sexual acts, including rubbing her buttocks against her son's penis. The remaining video showed the child facing the camera, naked with his penis in his hand.

In between receiving the video clips, Vital exchanged text messages with Vaughan, instructing her to perform various acts of a sexual nature, place the camera in specific positions, and send the videos. During this time, Vital and Vaughan also spoke on the phone.

Two months later, Vital was with his friend, Joshua Anderson. Vital allowed Anderson to borrow his cell phone. Out of curiosity, Anderson looked at the text messages on the cell phone, and discovered the video clips of Vaughan and her son. Anderson described the video as containing acts between a "young boy" and an "adult woman." Anderson left Vital's home, taking the cell phone with him.

Anderson showed the video clips to Daythron Lockley. Lockley described the video as depicting an "older woman" performing oral sex on a child. Lockley gave the cell phone to Los Angeles County Sheriff Deputy David Pine.

Deputy Pine watched a portion of the videos. He described one of the videos as containing a "female black adult" performing oral sex on a five to eight-year-old male. Deputy Pine provided the cell phone to Los Angeles County Sheriff Detective John Amis.

Detective Amis also viewed the videos and text messages on the cell phone and extracted additional data from it.

On February 16, 2016, Detective Amis spoke with Vital, who told him that he was 23 years old. Vital met Vaughan from social media three or four years earlier. He admitted that

3

Vaughan sent the videos to him, and that what he did was "[s]omewhat" wrong.

2.      Procedure

A jury convicted Vital of oral copulation with a child 10 years old or younger (Pen. Code, § 288.7, subd. (b); counts 2, 5, 6, 7, and 8);[1] lewd or lascivious acts on a child under 14 years old (§ 288, subd. (a); counts 3, 9, 10, 11, and 12); possession of child pornography (§ 311.11, subd. (a); count 4); and conspiracy to use a minor for sex acts (§§ 182, subd. (a)(1)/311.4, subd. (c); count 13). The jury acquitted Vital of one count of violating section 288.7, subdivision (b).

On March 2, 2018, the trial court sentenced Vital. The trial court imposed six years on count 3, and an additional two years consecutive, for each violation of section 288, subdivision (a), in counts 3, 9, 10, 11, and 12. The trial court imposed two years each for counts 4 and 13, and stayed each term pursuant to section 654. The total aggregate term for the determinate portion of the sentence was 16 years in state prison.

The trial court imposed consecutive terms of 15 years to life for counts 2 and 5, both violations of section 288.7, subdivision (b). The trial court imposed 15 years to life for each of the remaining violations of section 288.7, subdivision (b), in counts 6, 7, and 8. The indeterminate sentences in these counts were to run concurrently with counts 2 and 5. The total indeterminate portion of the sentence was 30 years to life in state prison.

---

[1] All further statutory references are to the Penal Code.

4

## DISCUSSION

1.  Section 288.7, subdivision (b), requires proof of a minimum age of the direct perpetrator

At trial, Vital was prosecuted under an aiding and abetting theory of liability for the violations of section 288.7, subdivision (b), oral copulation with a child under 10 years of age or younger. Accordingly, the trial court instructed the jury with CALCRIM No. 1128. In this instruction, the trial court told the jury that the prosecutor had to prove Vital was at least 18 years old at the time of the oral copulation with the victim.[2] Vital contends that this was error because guilt for the offense required proof that Vaughan—not Vital—was at least 18 years old at the time of the oral copulation. Under an aiding and abetting theory of liability against Vital, the prosecutor had to prove the age of Vaughan, who was the direct perpetrator. As we now explain, we agree.

An instruction omitting an element of the charged offense violates a defendant's rights under the federal and state constitutions. (*People v. Cole* (2004) 33 Cal.4th 1158, 1208; *People v. Flood* (1998) 18 Cal.4th 470, 479–480; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277–278.) "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by

---

[2] As read in this case, CALCRIM No. 1128 stated: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant engaged in an act of oral copulation with [the child]; [¶] 2. When the defendant did so, [the child] was 10 years of age or younger; [¶] 3. At the time of the act, the defendant was at least 18 years old."

5

removing an issue from the jury's consideration."  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

> a. *A conviction of section 288.7, subdivision (b), under an aiding and abetting theory of liability, requires the direct perpetrator to complete the crime*

Principals to a crime are "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission." (§ 31.)  Proof of liability for a crime under a theory of aiding and abetting falls into four distinct elements:  (a) a crime committed by the direct perpetrator, (b) knowledge of the direct perpetrator's intent to commit the crime, (c) an intent to assist in committing the crime, and (d) conduct by the aider and abettor that in fact assists the commission of the crime.  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)

Accordingly, "the commission of a crime is a prerequisite for criminal liability."  (*People v. Perez, supra*, 35 Cal.4th at p. 1225.)  For a defendant to be guilty under an aiding and abetting theory, it follows that someone other than the defendant must have attempted or committed a crime. (*Ibid*.)  "[A]iding and abetting liability cannot attach unless the substantive elements of a predicate offense are met."  (*Id.* at p. 1227.)  Liability for a crime under an aiding and abetting theory is thus " 'derivative.' " (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)  Here, Vital's liability derived from Vaughan's.  However, the trial court's instruction omitted this crucial point.

The trial court instructed the jury with CALCRIM Nos. 400 and 401, which explain the theory of aiding and abetting and its

6

elements. CALCRIM No. 401 correctly instructed that aiding and abetting requires the "perpetrator" to have committed the crime.

However, the trial court did not account for the theory of aiding and abetting in CALCRIM No. 1128, the instruction for section 288.7, subdivision (b). Unlike CALCRIM No. 401, CALCRIM No. 1128 used the word "defendant" rather than the word "perpetrator." Consequently, the instruction told the jury that to find guilt, the prosecutor had to prove Vital engaged in an act of oral copulation, and at the time, Vital was at least 18 years old.

This was error. The trial court should have instructed that the direct perpetrator Vaughan (not the defendant Vital) must satisfy the 18 year old age requirement. The trial court incorrectly omitted this element from the jury's consideration. The instruction relieved the prosecution's burden to prove Vital was guilty of the offenses under an aiding and abetting theory of liability because it omitted an element of the predicate offense.

### b. Omission of the word "personally" from the statute

The Attorney General argues that the 18 year old age requirement for a violation of section 288.7, subdivision (b), applies to whomever is charged as the defendant, regardless of whether he or she is acting as a direct perpetrator or as an aider and abettor. The Attorney General first asserts that the statutory language creates ambiguity as to whether a violation requires actually engaging in oral copulation. Specifically, he focuses on the omission of the word "personally" in the language: "[a]ny person 18 years of age or older who engages in oral copulation." (§ 288.7, subd. (b).) He explains that if the

7

Legislature intended for actually performing the act, it would have included the word "personally" to modify the word "engages." The Legislature's decision to not use the word "personally" in section 288.7, subdivision (b), suggests that a violator does not need to actually engage in the oral copulation. The Attorney General concludes that because a personal act is not required, then the statute provides for culpability of either a direct perpetrator or an aider and abettor.

This conclusion is sound. There is no dispute that section 288.7, subdivision (b), allows for aiding and abetting. However, the Attorney General takes this assertion one step too far. He implies that if the statute does not limit liability to direct perpetrators, any statutory requirement for a direct perpetrator must apply to the aider and abettor. Specifically, he would impose the minimum age requirement on anyone charged with section 288.7, subdivision (b), whether a direct perpetrator or aider and abettor.

The Attorney General relies on *People v. Gerber* (2011) 196 Cal.App.4th 368, 377, which discussed the phrase " '*personally* engaging' " in the possession of child pornography statute (§ 311.11, subd. (a)).[3] *Gerber* determined that the Legislature used the word "personally" to modify "engaging" in section 311.11, subdivision (a), to express that a child must be the one who actually commits or simulates sexual conduct. Thus, an image of

---

[3] Section 311.11, subdivision (a), provides: "Every person who knowingly possesses or controls any matter, representation of information, data, or image . . . the production of which involves the use of a person under of 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct . . . is guilty of a felony."

8

a child's face superimposed onto an adult body is insufficient to show a child personally engaged in sexual conduct.

*People v. Gerber*, *supra*, 196 Cal.App.4th 368, does not support the Attorney General's argument. First, the phrase "personally engaging" related to the victim, not a principal of the crime. The phrase does not distinguish an act by a direct perpetrator from an aider and abettor. Second, the court did not suggest that omitting the word "personally" imposes any statutory requirement for a direct perpetrator on an aider and abettor. Nor did it suggest that such an omission would allow for a conviction under an aiding and abetting theory without proof that the perpetrator committed a crime.

　　　　c.　　*The statutory language supports imposing the minimum age requirement on only the direct perpetrator*

The Attorney General cites no case that imposes a minimum age requirement for a sexual offense on an aider and abettor.[4] However, in the context of forcible oral copulation of a

---

[4] The Attorney General relies on the offense of unlawful sex with a minor. Subdivisions (b) and (c) of section 261.5 use the word "perpetrator" to specify the age differential between the direct perpetrator and the minor victim. The absence of similar language in section 288.7, subdivision (b), suggests to the Attorney General that the Legislature did not want to impose the minimum age requirement only on the direct perpetrator. We reject this argument. Section 288.7, subdivision (b), does not require an age differential between two persons. There is no need to reference those two persons to determine an age differential. Moreover, the age differential in section 261.5, subdivisions (b) and (c), still focuses on the direct perpetrator, rather than an aider and abettor. In this sense, it is consistent

9

person under 14 years of age under former section 288a, subdivision (c), a conviction for the aider and abettor required proof of only the direct perpetrator's age relative to the victim's age, and not the age of the aider and abettor. (*People v. Culbertson* (1985) 171 Cal.App.3d 508, 515 (*Culbertson*).)

Former section 288a, subdivision (c), provided: " 'Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he, . . . shall be punished by imprisonment.' " (*Culbertson*, *supra*, 171 Cal.App.3d at pp. 511–512.) Former subdivision (a) defined oral copulation as " 'the act of copulating the mouth of *one* person with the sexual organ or anus of *another* person.' " (*Culbertson*, at p. 514.) *Culbertson*, at page 514, determined that the Legislature's use of the singular word "person," in each instance in subdivision (a), contemplated only two persons involved in the act. The court concluded that the age differential in subdivision (c) must relate to the two persons directly involved in the act of oral copulation.[5] (*Culbertson*, at pp. 514–515.) The age of an additional person who aids and abets is irrelevant. (*Id*. at p. 514; *People v. Greenberg* (1980) 111 Cal.App.3d 181,186.) Proof of the aider and abettor's age, but not the direct perpetrator's age, was insufficient to support a

_____

with imposing an age requirement on the direct perpetrator in section 288.7, subdivision (b).

[5] Nothing in the language of an earlier version of the statute, nor the legislative history for the version analyzed in *Culbertson*, led the court to infer an intent to broaden the persons involved to include an aider an abettor whose age must be established. (*Culbertson*, *supra*, 171 Cal.App.3d at pp. 514–515.)

violation of former section 288a, subdivision (c).[6] (*Culbertson*, p. 515.)

 *Culbertson*, *supra*, 171 Cal.App.3d at page 515, additionally commented that the statute's omission of language which required the age of an aider and abettor showed the Legislature's intent to not require it. *Culbertson*, at page 515, noted that subdivision (d) of former section 288a did include language of "aiding and abetting" (former § 288a, subd. (d)). Had the Legislature intended a similar result in subdivision (c), it could have inserted the language. (See *Culbertson*, at p. 515.) This construction is consistent with section 288.7, subdivision (b), which similarly does not include specific language imposing the age requirement on an aider and abettor.[7]

---

 [6] The Attorney General attempts to limit *Culbertson* to its interpretation of former section 288a. He suggests that the word "participates" in former section 288a, subdivision (c), was more restrictive than the word "engages" in section 288.7, subdivision (b). It is true that "[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242.) However, there is no material difference in the meaning of the words "participate" and "engage," at least to the extent the Attorney General suggests.

 [7] The Attorney General argues that the sexual penetration proscription in section 288.7, subdivision (b), suggests the age requirement would apply to both direct perpetrators and aiders and abettors. One form of sexual penetration allows for aiding and abetting because it can occur when the violator causes a person to penetrate another person. (§ 289, subd. (k)(1).) The Attorney General again invites us to impose the age requirement simply because the statute allows for aiding and abetting. There

11

*Culbertson*'s reasoning applies to our interpretation of section 288.7, subdivision (b).  The definition of oral copulation for this offense is the same definition upon which *Culbertson* relied.  Accordingly, the two persons involved in the oral copulation in section 288.7, subdivision (b), must be the two persons directly involved in the act.  (*Culbertson, supra,* 171 Cal.App.3d at p. 515.)  Following *Culbertson*, we conclude that the statutory language supports applying the minimum age requirement to the person directly involved in the oral copulation with the child for a violation of section 288.7, subdivision (b).  Here, that person was Vaughan, not Vital.

> d.      *The legislative history of section 288.7*

The Attorney General directs us to the legislative history for section 288.7 to support his argument that the age requirement applies to both the direct perpetrator and aider and abettor.  Specifically, the Attorney General cites the original bill's purpose " 'to provide a comprehensive, proactive approach to preventing the victimization of California by sex offenders.'  (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1128 (2005-2006 Reg. Session), as amended March 7, 2006, p. 40.)"

As part of the Sex Offender Punishment, Control, and Containment Act of 2006, section 288.7 created a new crime for sex offenses against very young children with an indeterminate sentence as punishment.  We agree that the Legislature intended for section 288.7 to reach both aiders and abettors and direct

---

is no authority to do so.  *Culbertson, supra,* 171 Cal.App.3d at page 515, provided an example of language that would allow for such an application.  Short of such explicit language in the statute, we decline to follow the Attorney General's invitation.

perpetrators. Nothing in the legislative history suggests the contrary. However, nothing in the legislative history indicates an intent to impose the age requirement on both aiders and abettors and direct perpetrators.

        e.     *Consideration of erroneous instruction in conjunction with aiding and abetting instruction*

"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538.)

It is conceivable that the phrase "[t]he defendant engaged," as used in the first element of CALCRIM No. 1128, allowed the jury to consider that Vital engaged in oral copulation only as an aider and abettor. As discussed earlier, the trial court did also instruct the jury on the principles and elements of aiding and abetting in CALCRIM Nos. 400 and 401.

However, the phrase "the defendant was at least 18 years old" in the third element of CALCRIM No. 1128 specifically expressed to the jury that the minimum age requirement applied only to Vital as the defendant. The jury was never instructed to determine whether Vaughan, as the direct perpetrator, satisfied the minimum age requirement. Accordingly, the aiding and abetting instruction in CALCRIM No. 401 did not cure the incorrect instruction for section 288.7, subdivision (b).

    2.    Prejudice

When a jury instruction omits an element of a charged offense, we review the prejudicial effect under the standard established by *Chapman v. California* (1967) 386 U.S. 18. (*Neder v. United States* (1999) 527 U.S. 1, 4; *Chapman*, at p. 24; *People v.*

13

*Mil* (2012) 53 Cal.4th 400, 409.)  Under this test, an error is harmless when it appears " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Neder*, at p. 15; *Mil*, at p. 417; *Chapman*, at p. 24.)  We are to determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."  (*Neder*, at p. 19; *Mil*, at p. 417.)

At trial, the prosecutor presented Vital's statement to Detective Amis that he was 23 years old.  The prosecutor commented on this during closing argument to satisfy the age requirement for the violations of section 288.7, subdivision (b).  It would follow that the jury convicted Vital based on this evidence in accordance with the incorrect jury instruction.

The prosecutor also argued to the jury that it could infer from evidence that Vaughan was over 18 years old.  The Attorney General highlights the same evidence here.

First, the Attorney General contends that Vaughan's text messages support her age.  Specifically, when asked by Vital to orally copulate his 11-year-old friend, Vaughan declined, claiming that she was too old to engage in sexual acts with an 11 year old.  When asked by Vital about sexual acts with a 15 year old, Vaughan stated, "the youngest I will go is 18.  I'm saying he's not even a teenager."

This evidence does not bear on Vaughan's age.  It merely suggests Vaughan's preference for sexual participants who are 18 years old or older.  It is not sufficient evidence of her own age as 18 years old or older.

Second, the Attorney General relies on descriptions of Vaughan as an "adult" or an "older woman," by three witnesses

14

who viewed her in the videos.  The jury was also presented with these videos, as well as a photo of Vaughan.

Physical appearance may be sufficient to determine whether a person is a minor or an adult. (See *People v. Montalvo* (1971) 4 Cal.3d 328, 335 [suggesting in dicta that a view of a defendant may be sufficient to find he or she is an adult]; see also *People v. Castaneda* (1994) 31 Cal.App.4th 197, 202; *People v. Kurey* (2001) 88 Cal.App.4th 840, 847–848.)  However, physical appearance is more accurate to approximate the extremes of old age and youth.  (*Montalvo*, at p. 335.)

We are not dealing with extremes.  Vaughan was not an old woman.  Not much more can be said of her age based on the photograph and video evidence.  Quite often, there is no appreciable difference in physical appearances between an 18-year-old woman and 13 to 17-year-old girls.  Each of the witnesses provided only a generic characterization of age for Vaughan, as well as for her child.  For instance, Deputy Pine described the child as five to eight years old.  No witness even suggested an age range for Vaughan.

There is no evidence of Vaughan's age.  Even combined with the text messages, the videos and photograph of Vaughan could not rationally lead to a finding that she was 18 years old or older.  We cannot say that even if properly instructed, the jury nonetheless would have convicted Vital of the violations of section 288.7, subdivision (b), because Vaughan, beyond a reasonable doubt, was 18 years old or older.  The omission of the instruction to establish the minimum age requirement for Vaughan as the direct perpetrator was not harmless beyond a reasonable doubt.  The error was thus prejudicial.

15

3. Remedy

If reversal is required for instructional error but substantial evidence supports the verdict, double jeopardy principles do not prevent retrial. (*People v. Hallock* (1989) 208 Cal.App.3d 595, 607; *People v. Young* (1987) 190 Cal.App.3d 248, 254; *People v. Franco* (2009) 180 Cal.App.4th 713, 726.) On the other hand, a reversal based on the insufficiency of evidence constitutes an acquittal and bars retrial. (*People v. Seel* (2004) 34 Cal.4th 535, 544; *Burks v. United States* (1978) 437 U.S. 1, 15–18.)

When the sufficiency of the evidence is challenged on appeal, the court must " ' " 'review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054–1055; *People v. Zamudio* (2008) 43 Cal.4th 327, 357; *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.)

The Attorney General relies on the same evidence discussed above to argue that there was substantial evidence Vaughan was 18 years old or older. For the same reasons discussed above, we reject his argument. The record does not contain evidence from which the jury could find that she was 18 years old or older. The videos, the photo, and the text messages do not amount to substantial evidence that Vaughan satisfied the minimum age requirement.

Accordingly, we conclude that the evidence was insufficient to support counts 2, 5, 6, 7, and 8.

## DISPOSITION

We reverse Alonzo Lee Vital's convictions on counts 2, 5, 6, 7, and 8, and order the trial court to enter a judgment of acquittal on these counts.  We vacate the sentence in its entirety, and remand for resentencing.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.


HANASONO, J.<sup>*</sup>


I concur:


LAVIN, Acting P. J.

_____

<sup>*</sup> Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

DHANIDINA, J., Dissenting.

Alonzo Lee Vital instructed a mother to sexually assault her three-year-old son.  She complied.  Under an aiding and abetting theory of liability, a jury found Vital guilty of oral copulation with a child 10 years old or younger, in violation of a statute requiring the person who engages in the act to be at least 18 years old.  (Pen. Code, § 288.7, subd. (b) (hereafter 288.7(b)).)  Here, that person was the mother.  The trial court, however, instructed the jury that Vital, rather than the mother who directly engaged in the acts, had to be at least 18 years old.  (Maj. opn. *ante*, at pp. 5–12.)  I agree with the majority that this was instructional error.  I also agree that the error was not harmless.  (Maj. opn. *ante*, at pp. 13–15.)

I disagree that the error requires a judgment of acquittal on the affected counts.  Instead, I would reverse and remand for either a retrial or for a reduction to a lesser included offense on counts 2, 5, 6, 7, and 8.  Therefore, I respectfully dissent.

Vital exchanged text messages with Zaria Vaughan, reminding her of an earlier promise to give his "lil lil homie head."  When Vaughan made that promise, lil lil homie was just eight years old.  Vital, who had always wanted "to see something like that," said this would mean "so much to him and me."  Vaughan initially replied, "That was years ago."  When Vital told her that his lil lil homie was now 11 years old, Vaughn replied, "Fuck no he's not even 15!  Come on.  I'm too old now.  I can't.  I have kids."  Vital asked if 15 was the youngest she would consider, and she replied, "No the youngest I will go is 18.  I'm saying he's not even a teenage[r]."

Notwithstanding Vaughan's professed reluctance to engage in such acts, at Vital's urging she sent video clips of herself

sexually assaulting her three-year-old son.  Vital told Vaughan what he wanted:  "take out your ass and have him smack it like 5 times" and "[m]ake sure [it lasts] two min[utes]."  Unsatisfied with one video, Vital told Vaughan to do it again because he couldn't see her "sucking."  Vital directed, "Be into.  Make sound[s] and really suck."

The videos depict Vaughan doing as she was told—orally copulating her son, rubbing her buttocks against her son's penis, and recording the naked child holding his penis.  In one video, the child begged his mother, "Don't touch it, don't touch it!  Don't! Don't touch it," and told her "that's enough.  Mommy, that's enough."  He can be heard whimpering.

Three people who watched these videos described Vaughan as an adult.  Joshua Anderson described Vaughan as an "adult woman" doing "unspeakable" things to a "young boy."  Daythron Lockley said Vaughan was an "older woman" orally copulating a child.  A sheriff's deputy described Vaughan as a "female black adult" performing oral sex on a five to eight-year-old male.

Based on this evidence, a jury convicted Vital of five counts of violating section 288.7(b).  That section provides:  any person 18 years of age or older who engages in oral copulation with a child who is 10 years old or younger is guilty of a felony, punishable by a term of 15 years to life.  (*Ibid*.)  On its face, the statute plainly and expressly requires the person who actually performs the oral copulation to be at least 18 years old.  Common sense and the legislative context compel this interpretation. Section 288.7(b) was enacted as part of the Sex Offender Punishment, Control, and Containment Act of 2006, which sought to prevent sex offenders from victimizing the community. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1267.)  To that end,

section 288.7(b) created a harsher penalty (an indeterminate life sentence) for an adult (a person who is at least 18 years old) who orally copulates a young child.  Requiring the person who actually engages in the oral copulation to be at least 18 years old furthers the section's purpose of punishing adults who sexually assault young children.  Otherwise, under the People's interpretation of section 288.7(b), a 40-year-old adult who tells a 16-year-old child to orally copulate a 10-year-old child would be in violation of that law, even though no adult orally copulated a child.  However, proscribing *adults* from engaging in that act with a child is the ill the statute seeks to prevent and to punish.  A 40 year old who directs two children to engage in such an act commits conduct that is no less horrifying than a 40 year old who actually engages in the act, but the former does not violate section 288.7(b).

That being said, a person may aid and abet a crime under section 288.7(b).  (See *People v. Greenberg* (1980) 111 Cal.App.3d 181, 185 [nothing inherent in crime of oral copulating minor that precludes aiding and abetting].)  However, the aider and abettor's age is irrelevant.  (*People v. Culbertson* (1985) 171 Cal.App.3d 508, 512.)  The defendant in *Culbertson* aided and abetted a violation of former section 288a, subdivision (c).  That section applied to any person who participated in an act of oral copulation with another person under 14 years of age and more than 10 years younger than he or she.  Common sense dictated that the statutory language could only be construed to refer to the people "whose actual physical involvement is necessary to the act of oral copulation." (*Culbertson*, at p. 513.)  But the prosecution in *Culbertson* failed to prove the direct perpetrator's age, introducing evidence instead of the aider and abettor's age.

3

*Culbertson* therefore modified the judgment by reducing the charge to a lesser included offense.  (*Id.* at p. 516.)

Where, as here, the prosecution pursues an aiding and abetting theory of liability, the prosecution has the burden of proving an actus reus, i.e., a crime committed by the direct perpetrator.  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  Aider and abettor liability also requires the aider and abettor's knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those ends, and conduct by the aider and abettor that assists in achieving the crime.  (*Ibid.*)  What is missing here due to instructional error is the first element, the actus reus.  As to that element, the trial court misinstructed the jury that section 288.7(b) requires "the defendant" Vital to be at least 18 years old.  (CALCRIM No. 1128.)  The instruction thus omitted an element of the crime, that *Vaughan* had to be at least 18 years old.  (See *People v. Flood* (1998) 18 Cal.4th 470, 479–480; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277–278.)  Consequently, the jury was allowed to find Vital guilty of violating section 288.7(b) if it found he, rather than the direct perpetrator Vaughan, was at least 18 years old.  Absent a finding that Vaughan was at least 18 years old when she sexually assaulted her son, Vital could not have aided and abetted a violation of section 288.7(b).

This is not a case in which the instructional error was harmless.  When a jury instruction omits an element of a charged offense, we review the prejudicial effect under the standard established by *Chapman v. California* (1967) 386 U.S. 18, 24.  (*Neder v. United States* (1999) 527 U.S. 1, 4; *People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*).)  Under this test, we must reverse unless it appears "beyond a reasonable doubt that the error did

not contribute to the jury's verdict." (*Mil*, at p. 417.) Where, for example, the omitted element was uncontested and overwhelming evidence supports it, the error will be harmless. (*Ibid.*) Our task therefore is to determine " 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid.*) If there is a reasonable possibility the error might have contributed to the conviction, then we must reverse. (*In re Loza* (2018) 27 Cal.App.5th 797, 805.)

Such a reasonable possibility exists here. The jury was misinstructed that Vital, and not Vaughan, had to be at least 18 years old. (CALCRIM No. 1128.) The other aiding and abetting instructions, CALCRIM Nos. 400 and 401, did not clarify that Vaughan, as the direct perpetrator, had to be at least 18 years old. Also, the People reinforced the notion that Vital had to be over 18. (See *In re Loza*, *supra*, 27 Cal.App.5th at p. 805 [prosecutor's statements can contribute to error].) Finally, while there was significant evidence to establish that Vaughan was at least 18 years old, the evidence was not so overwhelming that I can say a rational jury *would have* found Vital guilty had it been properly instructed it had to find Vaughan was at least 18 years old. (See *Mil*, *supra*, 53 Cal.4th at pp. 418–419.) Thus, I agree there was instructional error, and it was not harmless.

But here is where I part ways with the majority. The majority directs the trial court to enter a judgment of acquittal on the section 288.7(b) counts 2, 5, 6, 7, and 8. (Maj. opn. *ante*, at p. 17.) However, if reversal is required for instructional error but substantial evidence nonetheless supports the verdict, double jeopardy does not prevent retrial. (*People v. Hallock* (1989) 208 Cal.App.3d 595, 607; *People v. Franco* (2009) 180 Cal.App.4th

5

713, 726.) Stated otherwise, where there is sufficient evidence to sustain a finding on an omitted element, remand for resentencing or retrial at the option of the prosecuting attorney is the proper remedy. (*Mil*, *supra*, 53 Cal.4th at pp. 418–419.)

Substantial evidence is evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) " 'The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

I would find there is sufficient evidence of the omitted element—that Vaughan was 18 years or older when she sexually assaulted her son. Evidence of Vaughan's age consisted of her statements in text messages, witnesses' observations of Vaughan, and the photograph and video clips of her.

First, Vaughan made statements suggesting she is over 18 years old. When Vital asked Vaughan to give "head" to his 11-year-old lil lil homie, she declined, saying she was "too old" to engage in sexual acts with an 11 year old. When Vital asked Vaughan about doing sexual acts with a 15 year old, she demurred, saying the youngest she would go was 18. This evidence suggests several things. It suggests Vaughan's preference for sexual partners who are 18 years old or older. It suggests an unwillingness to commit a crime. And it suggests Vaughan is over 18 years old. That is, she is comparing the victim's age to her own. If Vaughan were 17 years old or

6

younger, why say she is "too old" to have sex with someone under 18 years old and would only have sex with someone 18 years old or older? A reasonable inference is she did not want to have sex with anyone younger than 18 years old, i.e., younger than she.

Next, three witnesses (Anderson, Lockley, and a deputy sheriff) watched the videos or some portion of them. Each described Vaughan as an "adult" or an "older" woman.[1] Hence, three people saw the videos and concluded that Vaughan was an adult.

Finally, the People introduced the video clips and a photograph of Vaughan from the chest up wearing a tank top. The majority acknowledges that such evidence of physical appearance may be sufficient to determine whether a person is a minor or adult. (Maj. opn. *ante*, at p. 15.) However, the majority then asserts that a jury may make that determination *only* in instances involving the extremes of youth and old age. But, the law is not that only where someone is as old as Methuselah or as young as a newborn can a jury make a determination of age.

In fact, the law does not limit a trier of fact to making a finding about a person's age only when dealing in such extremes that age could be almost a matter of judicial notice. Rather, a jury's view of a person "in an appropriate case may be sufficient to support a finding that the defendant is an adult." (*People v. Montalvo* (1971) 4 Cal.3d 328, 335.) The defendant in *Montalvo* was charged with furnishing narcotics to a minor by an adult, a crime requiring the defendant to be over 21. (*Id.* at p. 330.) However, the question of his age was not presented to the jury and no evidence was introduced of it. *Montalvo* therefore

---

[1] There was no objection to this testimony.

7

reversed the judgment. In so doing, the court cautioned that it was not suggesting the prosecution must in every instance prove the defendant's actual age. "There will be occasions when his physical appearance will be such that the jury could not entertain a reasonable doubt that he was over the age of 21 years. 'Experience teaches us that corporal appearances are approximately an index of the *age* of their bearer, particularly for the marked extremes of old age and youth. In every case such evidence should be accepted and weighed for what it may be in each case worth. In particular the *outward physical* appearance of an alleged minor may be considered in judging his *age*; a contrary rule would for such an inference be pedantically over-cautious.'" (*Id.* at p. 335.)

Courts have therefore rejected the notion that, unless the appearance of minority is so obvious as to be beyond question, evidence of age should be limited to that which can establish the subject's true chronological age. (See, e.g., *People v. Kurey* (2001) 88 Cal.App.4th 840, 846–847.) *Kurey* found that pediatric experts can testify about the apparent age of child pornography victims. Moreover, *Kurey* noted that there is no such thing as " 'incompetent' " evidence of age, as evidence is either admissible or inadmissible. (*Id.* at p. 847.) "Proof of age, like proof of any other material fact, can be accomplished by the use of either direct or circumstantial evidence, or both." (*Ibid.*) Although I certainly agree that a pediatric expert's opinion about a child's apparent age is valuable, a lay opinion of the same is not worthless or legally insufficient. That is, we credit jurors with common sense and intelligence, informed by their life experiences. (*People v. McKinnon* (2011) 52 Cal.4th 610, 670; *People v. San Nicolas* (2004) 34 Cal.4th 614, 649.) Determining

whether a person is over or under a certain age based on the person's physical appearance and other circumstantial evidence is a quintessential fact finder function.

*People v. Castaneda* (1994) 31 Cal.App.4th 197 is an additional example of this principle. The crime at issue in *Castaneda* required the defendant to be at least 10 years older than his victim. (*Id.* at p. 202.) The evidence consisted of the victim's and the defendant's testimony that the defendant was an adult, that the defendant married the victim's mother when the victim was little more than a toddler, and the defendant's physical appearance before the jury. (*Id.* at p. 203.) Although "such evidence may not amount to *conclusive* proof that [the defendant] was 10 years her senior, it was assuredly enough to permit the trier of fact to infer such, at least in the absolute absence of any contradiction" by the defendant. (*Ibid.*)

Here, Vaughan was not an old woman. Nor was she a young child. The photographic evidence coupled with the other evidence, especially her own statements, is enough for a rational fact finder to conclude beyond a reasonable doubt she was over 18 years of age when she committed the crimes. To find otherwise is an improper invasion into the province of the jury. I would therefore conclude that a retrial is not barred.


DHANIDINA, J.


9