Filed 6/12/24  P. v. Roberts CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081739 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD287551) |
| ANTHONY B. ROBERTS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Reversed in part, affirmed in part as modified, and remanded with directions.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Christopher P. Beesley, Deputy Attorneys General, Plaintiff and Respondent.

A jury found Anthony B. Roberts guilty of committing two counts of sodomy with a child under age 14 (Pen. Code,[1] § 286, subd. (c)(1)) (counts 1–2); four counts of oral copulation with a child under age 14 (§ 287, subd. (c)(1)) (counts 3–6); and four counts of lewd acts upon a child under age 14 (§ 288, subd. (a)) (counts 7–10). After making true findings on various aggravating factors, the trial court sentenced Roberts to a prison term of 18 years.

The sole contested factual issue at trial was whether the victim was under the age of 14 at the time Roberts committed the relevant acts. Roberts contends that insufficient evidence supports such a finding. He further contends that the trial court erred in refusing to give a clarifying jury instruction regarding the victim's age.

We conclude that due to the fact that the victim was adopted from an Ethiopian orphanage at the stated age of three and a half, and his Ethiopian birth certificate does not provide reasonable, credible and solid evidence of his actual age, insufficient evidence supports a finding that the victim was under the age of 14 during the relevant time period. Accordingly, we reduce the convictions in counts 1 through 6 to the lesser included offenses of sodomy and oral copulation with a person under the age of 18, and we reverse the convictions in counts 7 through 10 for committing a lewd act on a child under the age of 14.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

At trial, Roberts did not contest that between approximately September 2019 and the beginning of 2020, he engaged in a series of sexual acts involving Boy.[2]

Boy was adopted from an Ethiopian orphanage as a young child. According to the evidence at trial, when Boy's adoptive parents went to Ethiopia to adopt him in 2010, they were provided with a birth certificate that stated a birthdate in June 2006, meaning that Boy was identified as being three and a half years old when he was adopted. After Boy arrived in the United States, the Ethiopian birth certificate was used to generate an American birth certificate, which also stated a June 2006 birthdate.

After the sexual conduct came to light, Roberts was charged in an indictment alleging 10 sexual acts that took place between August 1, 2019 and March 1, 2020. Based on Boy's birthdate in June 2006, he was 13 years old during each of those alleged acts. Specifically, based on his stated age, Boy would have ranged from the age of 13 years and three months old in late September 2019 to the age of 13 years and eight months in late February 2020. Accordingly, each of the 10 counts alleged crimes that required a victim under the age of 14 years: two counts of sodomy with a child under age 14 (§ 286, subd. (c)(1)) (counts 1–2); four counts of oral copulation of a

_____

[2] At trial, Boy testified that the sexual conduct started in September 2019 and lasted until sometime in January or February 2020. Based on the testimony of Boy's mother, Roberts moved out of town in March 2020, meaning that the physical contact between Boy and Roberts necessarily ended by that date.

child under age 14 (§ 287, subd. (c)(1)) (counts 3–6); and four counts of lewd acts upon a child under age 14 (§ 288, subd. (a)) (counts 7–10).

At trial, Roberts did not attempt to dispute that the sexual conduct occurred. Defense counsel's sole argument was that the People failed to prove beyond a reasonable doubt that Boy was under 14 years of age at the time of the offenses. Based on that argument, defense counsel stated that the jury should (1) find Roberts guilty of lesser included offenses for the sodomy and oral copulation counts, which required the People to prove only that Boy was under 18 years of age at the time of the offenses (§§ 286, subd. (b)(l)); 287, subd. (b)(l)); and (2) acquit Roberts on the lewd act counts (§288, subd. (a)), as no age-based lesser included offense was applicable.

To support his contention that the People failed to meet their burden to prove Boy was under 14 years of age between September 2019 and early 2020, Roberts presented extensive evidence about the unreliability of the birthdate that appears on a birth certificate of a child adopted from an Ethiopian orphanage.

An expert on Ethiopian adoptions testified that Ethiopia does not have a birth registration system to keep track of the date on which a person is born. Most people in Ethiopia do not know what their birthdate is because a birthdate is not relevant information in Ethiopian culture. Birthdays are not celebrated, and many people are illiterate and therefore are unable to informally record family member birthdates. If an Ethiopian person needs a birth certificate for something, such as obtaining a passport or facilitating an adoption, a birth certificate is issued based on a "guesstimate" of the person's birthdate. Further, the location indicated on Boy's birth certificate as his birthplace is a rural, uneducated and impoverished part of Ethiopia, making

4

it "very very unlikely" that someone would know their birthdate in the place where Boy was born.[3]

The expert testified that because a birth certificate is required for adoption from Ethiopia, but orphanages "never know" a child's actual birthdate, "it's a pure guess in trying to figure out a child's age." Further, the expert explained, "I've discussed it with orphanage people in Ethiopia. They know that families want to adopt young children. So they will make the child younger to get the child placed because they keep getting more children brought in, and they're running out of the space. They're running out of food. So the younger that they can make the child, the more quicker the child is going to be placed for adoption and moved from the government orphanage to the adoption agencies private orphanage." Thus, according to the expert, she was aware of cases where the child's actual age was understated "[b]y several years," and she had "seen three and four year olds who really after they started having medical care and nutrition were really five and six years old." When asked, "generally speaking, would you expect a date of birth on an Ethiopian birth certificate to be accurate?" The expert answered, "No, never. No, it's a guess."

Roberts also presented testimony from Boy's pediatrician. According to the pediatrician, Boy was extremely tall for his age at 11, 12, 13, and 14

---

[3] Complicating matters further, Ethiopia uses a different calendar than the Gregorian calendar used in the United States and many other countries. Thus, the birth certificate issued for Boy in Ethiopia shows a birthdate of "17/10/1998" in the Ethiopian calendar as well as a birthdate in June 2006 using the Gregorian calendar. The expert testified that "not everybody" correctly converts between an Ethiopian calendar date and a Gregorian calendar date.

years of age.[4]  The pediatrician testified that, based on the milestones he observed in caring for Boy, it was plausible that Boy is the age stated on his birth certificate, but Boy could also be a year older.

Other than presenting evidence of Boy's birth certificates, and allowing the jury to view Boy's physical appearance and demeanor when he testified at trial (at the stated age of 16), and participated in a forensic interview (at the stated age of 13) the People presented no evidence relevant to the *actual* date on which Boy was born.  The People also did not attempt to discredit the testimony of the defense's expert on Ethiopian adoptions.  Instead, during closing argument, the People argued that the jury should simply accept as fact the date of birth stated on Boy's birth certificate.  "He was three and a half when he was brought over here.  He was brought to doctor's appointments where it was a fact that he was three and a half[,] that he was this stated age.  He went to school where it was a fact that he was a stated age.  He grew up in the house . . . where it was a fact that he was a stated age. . . .  It was a fact that [Roberts] was there [to celebrate birthdays], and that [Boy] was the age that he was.  That everyone knew him to be.  That was his age.  That didn't change."  The People argued that Boy "has a birth certificate, and you heard testimony from the person himself."  The People explained to jurors that they should not even consider the lesser included offenses that were based on Boy's age being over 13, representing that "the [lesser included offenses] are only given to you because they're legally

---

[4]     At age 11, Boy's height was in the 97th percentile; at age 12, it was in the 98th percentile; at age 13 it was in the 99th percentile and "off the charts"; at age 14 it was in the 98th percentile.  If Boy was actually a year older than his stated age, he would have been in the 90th percentile when his stated age was 11 rather than in the 97th percentile.

6

required by state law. They don't apply here. Because the fact is [Boy] was 13. That's not in question."

In contrast, defense counsel argued that "[i]t's his actual birthday which matters. It's his actual birthday which must be proven beyond a reasonable doubt before you can think about convicting Mr. Roberts of the primary charges relating to [Boy] being under 14 at the time of these acts. According to defense counsel, because of the uncertainty created by Boy's adoption from an Ethiopian orphanage, the People had not met that burden.

The jury returned guilty verdicts on all of the counts as charged. After making true findings on certain aggravating circumstances, the trial court imposed a prison sentence of 18 years.

## II.

## DISCUSSION

A.   *Roberts's Challenge to the Sufficiency of the Evidence*

Roberts contends that insufficient evidence supports a finding that Boy was under the age of 14 during the relevant time frame of September 2019 to early 2020.[5]

1.   *Standard of Review*

In determining whether sufficient evidence supports a finding that Boy was under 14 years of age during the relevant time frame, "we must ' "review the entire record in the light most favorable to the judgment," ' and then determine whether it contains ' "evidence that is reasonable, credible, and of solid value" ' such that a reasonable jury could have found the defendant

---

[5]   The evidence at trial did not indicate any particular date between September 2019 and early 2020 for any of the specific acts of sexual conduct charged against Roberts. Instead of proving that specific acts took place on particular dates, the People relied on the argument that, based on Boy's stated birthdate in June 2006, he was under the age of 14 during the entire time frame.

7

guilty beyond a reasonable doubt. . . . '[S]ufficiency determinations necessarily take account of the "standard of proof that applied before the trial court." ' . . . '[T]hat is why in criminal cases we must ensure the record demonstrates substantial evidence to establish guilt *beyond a reasonable doubt*.' [¶] . . . We must ' "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence . . . 'for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' . . . But we cannot, however, venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record. ' "[A] reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' . . . It 'must logically flow from other facts established in the action,' and it cannot be 'based entirely on the suspicions of the officers involved in the case and the conjecture of the prosecution.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167–168, citations omitted, italics added].)

2.    *Insufficient Evidence Supports the Convictions*

"[U]nder the due process guarantees of both the California and United States Constitutions, the prosecution has the burden of proving beyond a reasonable doubt each essential element of the crime." (*People v. Flood* (1998) 18 Cal.4th 470, 481.)

Each of the offenses that Roberts was found guilty of committing required the People to prove, as an element, that the victim was under the age of 14. Specifically, section 286, subdivision (c)(1) makes it a crime to "participate[ ] in an act of sodomy with another person who is under 14 years of age and more than 10 years younger than [the defendant]." Section 287,

8

subdivision (c)(1) makes it a crime to "participate[ ] in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than [the defendant]." Section 288, subdivision (a), makes it a crime to commit a lewd act "upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."

"In common parlance, a person reaches a particular age on the anniversary of his or her birth and remains that age until reaching the next anniversary of his or her birth." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) Relying on the language in former Civil Code section 26 (now contained in Family Code section 6500), our Supreme Court has explained that a person becomes one year older on the first minute of the anniversary of the person's birth, which is known as the "birthday rule." (*In re Harris* (1993) 5 Cal.4th 813, 844, 849 (*Harris*); see also Fam. Code, § 6500 ["The period of minority is calculated from the first minute of the day on which the individual is born to the same minute of the corresponding day completing the period of minority."].)[6] Thus, to obtain a conviction against Roberts, the People were required to prove to the jury, beyond a reasonable doubt, that Roberts engaged in sexual conduct with Boy before the 14th anniversary of Boy's birth.

---

[6]     *Harris* explained that the Legislature chose the "birthday rule" for calculating a person's age instead of the common law rule, under which a person was treated as turning a year older on "the earliest moment of the day *before* their anniversary of birth." (*Harris*, *supra*, 5 Cal.4th at pp. 844–845.) Based on *Harris*, the trial court instructed with the standard CALCRIM jury instructions for each of the offenses charged against Roberts that "[u]nder the law, a person becomes one year older as soon as the first minute of his or her birthday has begun." (CALCRIM Nos. 1080, 1082, 1090, 1092, 1110.)

In the vast majority of criminal prosecutions, a person's age will not be disputed because that person will have been born in a country that keeps records of births. However, in those cases where age is in dispute, "[p]roof of age, like proof of any other material fact, can be accomplished by the use of either direct or circumstantial evidence, or both." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 847 (*Kurey*).) "Physical appearance may be sufficient to determine whether a person is a minor or an adult. [Citations.] However, physical appearance is more accurate to approximate the *extremes* of old age and youth." (*People v. Vital* (2019) 40 Cal.App.5th 925, 936, italics added.) Common experience teaches that appearance is only an *approximate* indicator of age, especially in the case of teenagers. Indeed, the pediatrician agreed in his testimony that children grow at a different rates. Where, as here, the jury must make a *precise* determination of a close call about the age of a teenager, appearance alone provides only a speculative basis to determine beyond a reasonable doubt that the victim is a specific age. (See *Vital*, at p. 936 [concluding that physical appearance did not provide evidence to establish that a female was over the age of 18 because "[q]uite often, there is no appreciable difference in physical appearances between an 18-year-old woman and 13- to 17-year-old girls," and noting that "[w]e are not dealing with extremes" of age].)

A jury may not base an inference merely on " ' " 'suspicion[,] . . . imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' " (*Ware, supra*, 14 Cal.5th at p. 167.) It would have been purely speculative for the jury to rely on Boy's physical appearance to infer that Boy was, in fact, his stated age of 13 years and three months to 13 years and eight months during the relevant time frame rather than having turned 14 years old either before or during that period.

10

The only other relevant evidence of Boy's age was the Ethiopian birth certificate, which was then used to generate the American birth certificate. Substantial evidence must be of " ' "reasonable, credible, and of solid value." ' " (*Ware, supra,* 14 Cal.5th at p. 167.) The uncontradicted expert testimony presented by the defense established that the Ethiopian birth certificate did not provide reasonable, credible and solid evidence of Boy's *actual* birth date. Instead, as the expert explained, the birthdate on the birth certificate was almost certainly a guess, and the people who came up with the date may have had an incentive to say that Boy was younger than they believed him to be.

The People were not without options to attempt to prove Boy's *actual* age if they believed that Boy was, in fact, under 14 years old during the relevant time period. They could have presented their own medical expert, who may have attempted to rely on certain developmental factors or other approaches to determining a child's age. (Cf. *Kurey, supra,* 88 Cal.App.4th at pp. 844–845, 847 [in a case where the People had the burden of proving that persons depicted in pornographic images were minors, both parties called medical experts to opine on age].) They could have asked Boy's mother during her testimony to authenticate family photographs showing Boy at a number of different stages of his childhood to help the jury assess whether Boy's stated birthdate was accurate.[7] They could have asked Boy's mother, with experience raising two other sons who were slightly older than Boy, whether Boy's stated birthdate seemed to be accurate based on developmental milestones she witnessed during his childhood. Further, if the facts supported such an approach, the People could have presented their own

---

[7] The only photographs shown to the jury were one photo from shortly after Boy's adoption and recent photos from 2019 and 2020.

11

expert on Ethiopian adoptions to call into question some of the things said by the defense's expert. However, the People did none of those things.[8] Instead, they simplistically urged the jury to follow the birthdate that appeared on Boy's Ethiopian birth certificate because that birthdate was always understood as "a fact." The People's approach, although apparently persuasive to the jury, was not based on the law, which requires a finding as to a victim's *actual* age.

We conclude that the People did not meet their burden to present evidence sufficient for a reasonable juror to find beyond a reasonable doubt that Boy was under the age of 14 from September 2019 to early 2020.[9]

B. *Reduction to the Lesser Included Offenses for the Sodomy and Oral Copulation Counts*

As a remedy for the lack of sufficient evidence to support his convictions, Roberts does not seek an outright reversal on all of the counts. Instead, he seeks a disposition (1) reducing his convictions on the sodomy and oral copulation counts to lesser included offenses applicable to cases in which the victim was under 18 years of age (§§ 286, subd. (b)(1), 287, subd. (b)(1)); and (2) reversing the convictions for committing lewd acts on a child under the age of 14 (§ 288, subd. (a)). The disposition that Roberts seeks here is the same result that he sought from the jury, when he asked it to return a guilty

---

[8] Boy's trial strategy focusing on the lack of evidence regarding his actual date of birth should not have been a surprise to the People, as defense counsel filed a motion almost two months before the start of trial, which argued that Boy's birth certificates and all mention of Boy's age should be excluded at trial due to uncertainty as to Boy's true age.

[9] Because we are reversing based on insufficiency of the evidence, we need not, and do not, consider whether, as Boy contends, the trial court prejudicially erred in declining to instruct the jury that it must determine whether Boy was under 14 years of age based on his *actual* birthday.

12

verdict on the lesser included offenses to the sodomy and oral copulation counts, and to acquit him on the lewd act counts.

"[A]n appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense." (*People v. Navarro* (2007) 40 Cal.4th 668, 671 [citing § 1181, subd. (6) and § 1260].)

Section 286, subdivision (b)(1) makes it a crime to "participate[ ] in an act of sodomy with another person who is under 18 years of age." Section 287, subdivision (b)(1) makes it a crime to "participate[ ] in an act of oral copulation with another person who is under 18 years of age." Both crimes are lesser included offenses to sodomy and oral copulation with a child under the age of 14, as the statutory elements of the greater offense involving a victim under the age of 14 include all of the statutory elements of the lesser offense involving a victim under the age of 18. (*People v. Culbertson* (1985) 171 Cal.App.3d 508, 516; *People v. Jerome* (1984) 160 Cal.App.3d 1087, 1098 ["By logical imperative, it necessarily follows if one commits oral copulation with a minor under 14, one also commits that act with a person under 18]; see also *People v. Reed* (2006) 38 Cal.4th 1224, 1227 [describing the " 'elements' " test for determining a lesser included offense].) When the jury found, in counts 1 through 6, that Roberts committed the crimes of sodomy against a child under the age of 14 and oral copulation against a child under the age of 14, it also necessarily found all of the elements needed for the lesser included offenses set forth in section 286, subdivision (b)(1) and section 287, subdivision (b)(1). However, there is no age-based lesser

included offense to the crime of committing a lewd act against a child under the age of 14 (§ 288, subd. (a).)[10]

Accordingly, we reduce the convictions in counts 1 and 2 to the crime of sodomy with a person under 18 years of age (§ 286, subd. (b)(1)), and we reduce the convictions in counts 3 through 6 to the crime of oral copulation with a person under 18 years of age (§ 287, subd. (b)(1)). As there is no age-based lesser included offense to the crime of committing lewd acts against a child under the age of 14, the convictions in counts 7 through 10 are reversed because they are not supported by sufficient evidence.

[10] Although section 288, subdivision (c)(1) makes it a crime to commit a lewd act against "a child of 14 or 15 years," that offense is not a lesser included offense of section 288, subdivision (a), which makes it a crime to commit a lewd act against "a child who is under the age of 14 years." The age requirements for the two offenses are not overlapping, and therefore the two offenses involve distinct statutory elements.

DISPOSITION

We modify the judgment to reduce the convictions in counts 1 and 2 to the crime of sodomy with a person under 18 years of age (§ 286, subd. (b)(1)), and to reduce the convictions in counts 3 through 6 to the crime of oral copulation with a person under 18 years of age (§ 287, subd. (b)(1)).  The convictions for committing lewd acts against a child under the age of 14 in counts 7 through 10 (§ 288, subd. (a)) are reversed.  This matter is remanded to the trial court for resentencing.


IRION, Acting P. J.

WE CONCUR:



DATO, J.



KELETY, J.

15